UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RAIMEE FERRELL SANDERS, | |
| Plaintiff, | Case No. 3:23-cv-00926 |
| v. | Magistrate Judge Alistair E. Newbern |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## <u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Raimee Ferrell Sanders filed this action under 42 U.S.C. § 405(g) and § 1383(c) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying her applications for child's insurance benefits (CIB) based on her father Curtis Sanders's earnings under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and for child's supplemental security income (SSI) under Title XVI of the Social Security Act, *id.* §§ 1381–1383f. (Doc. No. 1.) Sanders has filed a motion for judgment on the administrative record (Doc. No. 10), to which the Commissioner has responded in opposition (Doc. No. 12). Sanders did not file an optional reply.

The parties have consented to the Magistrate Judge's jurisdiction under 28 U.S.C. § 636(c). (Doc. No. 9.) Having considered the parties' arguments and the administrative record (Doc. No. 6), the Court will grant in part and deny in part Sanders's motion and affirm in part and reverse in part the Commissioner's decision.

## I.       Background

### A.       Sanders's CIB and SSI Applications

This is Sanders's second benefits-related action in this Court. Sanders filed an application for CIB and child's SSI in 2018 at age seventeen, alleging that she has been disabled since March 31, 2000, Sanders's date of birth, because of scoliosis and muscular dystrophy. (AR 95–96, 109–110.[1]) The Commissioner denied Sanders's applications initially (AR 119, 120) and on reconsideration (AR 157, 158). At Sanders's request, an administrative law judge (ALJ) held a hearing regarding her applications on September 4, 2019. (AR 41–94.) Sanders appeared with counsel and testified. (AR 43–90.) The ALJ also heard testimony from a vocational expert. (AR 90–92.) The ALJ issued a written decision finding that Sanders was not disabled within the meaning of the Social Security Act and applicable regulations and denying her claims for CIB and child's SSI. (AR 12–34.) On August 10, 2020, the Social Security Appeals Council denied Sanders's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 1–6.)

Sanders appealed to this Court. *See* Complaint, *Sanders v. Comm'r of Soc. Sec.*, Case No. 3:20-cv-00871 (M.D. Tenn. Oct. 9, 2020), ECF No. 1. After Sanders moved for judgment on the administrative record, *see* Plaintiff's Motion for Judgment on the Administrative Record, *Sanders*, Case No. 3:20-cv-00871 (M.D. Tenn. July 19, 2021), ECF No. 30, the Commissioner filed an unopposed motion to enter judgment in Sanders's favor and remand her applications to

---

[1]      The transcript of the administrative record (Doc. No. 6) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

the SSA for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[2] *See* Motion for

Entry of Judgment Under Sentence Four, 42 U.S.C. § 405(g), *Sanders*, (M.D. Tenn. Aug. 5, 2021),

ECF No. 31. The Court granted the Acting Commissioner's motion to remand and remanded

Sanders's applications to the SSA. (AR 1232.)

On remand, the Appeals Council vacated the Commissioner's final decision and remanded

Sanders's applications to the original ALJ. (AR 1236–38.) The Appeals Council directed the ALJ

to "[g]ive further consideration to the medical source opinion(s) and prior administrative findings";

"[g]ive further consideration to [Sanders's] maximum residual functional capacity and provide

appropriate rationale with specific references to the evidence of record in support of the assessed

limitations"; and, "[i]f warranted by the expanded record, obtain supplemental evidence from a

vocational expert to clarify the effect of the assessed limitations on [Sanders's] occupational base

[ ]." (AR 1238.) The ALJ held a telephonic hearing on October 14, 2022 (AR 1186–1231) at which

Sanders appeared with counsel and testified (AR 1188, 1190–1227) and a vocational expert

testified (AR 1228–31). A medical expert who was scheduled to testify did not appear, but the ALJ

concluded that there was enough evidence in the record to issue his findings without reconvening

the hearing for the medical expert's testimony. (AR 1188–89, 1227–28.)

### B.  The ALJ's Findings on Remand

On November 23, 2022, the ALJ issued a second written decision finding that Sanders was

not disabled within the meaning of the Social Security Act and applicable regulations and denying

her claims for CIB and SSI. (AR 1153–78.) The ALJ made the following enumerated findings:

> 1.  The claimant was born on March 31, 2000, and was, therefore, an
> adolescent on March 8, 2018, the application date (e.g., 20 CFR 416.926a(g)(2)(v)).
> The claimant attained age 18 on March 30, 2018 (20 CFR 416.120(c)(4)). The

---

[2]  Kijakazi served as Acting Commissioner from July 9, 2021, to December 20, 2023. *See SSA Commissioners, Kilolo Kijakazi*, Soc. Sec. Admin., https://perma.cc/DEB5-UKUV.

claimant had not attained age 22 as of March 31, 2000, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

\* \* \*

2.      The claimant engaged in substantial gainful activity after the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*). However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

\* \* \*

3.      Prior to attaining age 18, the claimant had the following severe impairments: muscular dystrophy; obesity; scoliosis, status post fusion surgery at T4-L5; and left hip dysplasia status post pelvic osteotomy (20 CFR 416.924(c)).

\* \* \*

4.      Prior to attaining age 18, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

\* \* \*

5.      Prior to attaining age 18, the claimant did not have an impairment or combination of impairments that functionally equaled the severity of the listings (20 CFR 416.924(d) and 416.926a).

\* \* \*

6.      Because the claimant did not have an impairment or combination of impairments that met, medically equaled any listing, or functionally equaled the listings, the claimant was not disabled prior to attaining age 18 (20 CFR 416.924(a)).

7.      The claimant has not developed any new impairment or impairments since attaining age 18.

8.      Since attaining age 18, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1520(c) and 416.920(c)).

9.      Since attaining age 18, the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

*    *    *

10.    After careful consideration of the entire record, I find that, since attaining age 18, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), she can lift and carry ten pounds occasionally and five pounds frequently. The claimant can sit six of eight-hours each eight-hour workday and can stand and walk two of eight hours each for a full 8-hour day. She has unlimited push/pull and gross/fine dexterity except for occasional push/pull with the lower extremities, bilaterally, and occasionally overhead lifting/reaching with the upper extremities, bilaterally. She can occasionally climb stairs, but no ladders or running. She can occasionally bend, stoop, crouch, and balance, but not crawl, twist or squat. She is precluded from exposure to heights, dangerous machinery and uneven surfaces. She requires only occasional exposure to dust, fumes, and gases, and requires a cane to ambulate to and from the workstation.

*    *    *

11.    Since attaining age 18, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

*    *    *

12.    The claimant was born on March 31, 2000, and attained age 18 on March 30, 2018. She became a younger individual age 18–44, on the date of attainment of age 18 (20 CFR 404.1563 and 416.963).

13.    The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

14.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

15.    Since the date the claimant attained age 18, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

*    *    *

16.    The claimant has not been disabled, as defined in the Social Security Act, since March 8, 2018, the date the application was filed (20 CFR 404.350(a)(5), 404.1520(g), 416.906 and 416.924(a) and (c)), through the date of this decision.

(AR 1158–78.)

On July 12, 2023, the Appeals Council denied Sanders's appeal of the ALJ's decision, finding that the ALJ's "decision complie[d] with the orders of the U.S. District Court and Appeals Council." (AR 1145.) The ALJ's decision is the final decision of the Commissioner. (AR 1145–49.)

### C. Appeal Under 42 U.S.C. § 405(g) and § 1383(c)(3)

Sanders filed this action for review on August 31, 2023 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

Sanders argues that the Court should again remand her applications to the SSA for reconsideration because the ALJ violated applicable regulations by improperly evaluating the state agency medical consultant Dr. Sue E. Slaughterbeck's opinion and a questionnaire completed by Stewarts Creek High School teacher Theowana Hatchert. (Doc. No. 10-1.) Sanders also argues that the ALJ improperly evaluated the persuasiveness of the medical opinion of Dr. Stephen K. Goewey. (*Id.*) The Commissioner responds that the ALJ followed SSA regulations and that the ALJ's decision is supported by substantial record evidence. (Doc. No. 12.) Sanders did not file an optional reply.

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to address the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir.

6

2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

### B. Determining Disability at the Administrative Level

#### 1. Child's SSI

Section 1382c(a)(3)(C)(i) of the Social Security Act states that:

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

SSA regulations require that an ALJ follow a three-step sequential analysis in determining whether a person under the age of 18 claiming SSI benefits is disabled. 20 C.F.R. § 416.924(a); *see Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Maben obo K.T. v. Kijakazi*, Case No. 2:20-cv-02260, 2022 WL 3337162, at *1 (W.D. Tenn. Apr. 12, 2022) ("[T]he

7

Commissioner follows a three-step sequential evaluation" "[w]hen determining disability on a claim for child's SSI[.]"). At the first step, the ALJ determines whether the individual is engaging in any "substantial gainful activity[.]" 20 C.F.R. § 416.924(a). "Substantial gainful activity is work activity that is both substantial and gainful[.]" *Id.* § 416.972. SSA regulations define "[s]ubstantial work activity" as "work activity that involves doing significant physical or mental activities." *Id.* § 416.972(a). "Gainful work activity is work that you do for pay or profit" or "the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § 416.972(b). If the ALJ determines that the individual is engaged in any substantial gainful activity, then "[the ALJ] will determine that [the individual] [is] not disabled and not review [the] claim further[,]" "regardless of [the claimant's] medical condition or age, education, or work experience." 20 C.F.R. § 416.924(a)–(b).

If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ advances to step two. At step two, the ALJ "consider[s] [the claimant's] physical or mental impairment(s) [ ] to see if [the claimant] ha[s] an impairment or combination of impairments that is severe." *Id.* § 416.924(a). A slight abnormality "that causes no more than minimal functional limitations" is not severe and cannot be the basis for a disability. *Id.* § 416.924(c). If the claimant's medically determinable "impairment(s) is not severe, [the ALJ] will determine that [the claimant] is not disabled and not review [the] claim further." *Id.* § 416.924(a).

If the claimant has a severe impairment or combination of impairments, the ALJ will advance to step three. At step three, the ALJ considers whether the claimant's severe impairment "meets, medically equals, or functionally equals the listings" of disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.924(a), (d). In making this determination, the ALJ must consider all of the claimant's medically determinable impairments,

even those that are not classified as severe. A claimant is disabled if his or her impairments meet, medically equal, or functionally equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and if it has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 416.924(a). If not, the claimant is not disabled. *Id.*

A child's impairment is "functionally equal" to a listed impairment "if the child has an extreme limitation in one area of functioning, or a marked limitation in two areas of functioning." *Miller ex rel. Devine v. Comm'r of Soc. Sec.*, 37 F. App'x 146, 148 (6th Cir. 2002); 20 C.F.R. § 416.926a(a). A child's functional equivalency is assessed in terms of six domains: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." 20 C.F.R. § 416.926a(b)(1). To determinate whether the claimant has a "marked" or an "extreme" limitation, the ALJ "will consider [the claimant's] functional limitations resulting from all of [his or her] impairments, including their interactive and cumulative effects." 20 C.F.R. § 416.926a(e)(1)(i). A marked limitation is one that "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation is one that "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). Extreme limitation "does not necessarily mean a total lack or loss of ability to function." *Id.*

### 2. CIB

When considering whether a claimant is entitled to child or adult insurance benefits, ALJs employ a "five-step sequential evaluation process" to determine whether the claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. § 404.1520(a)(4); *Edwards v. Comm'r of Soc. Sec.*, No. 23-5490, 2024 WL 2705000, at *1 (6th Cir. Feb. 12, 2024); *Bonham-Conn v. Comm'r Soc. Sec.*, Case No. 08-13248, 2009 WL 3211000, at *5 (E.D. Mich.

9

Sept. 29, 2009) (citing 20 C.F.R. § 404.1520(a)(1)–(2)). "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. § 404.1520(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:16-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted*, 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [his] limitations.'" *Combs*, 459 F.3d at 643 (first alteration in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. § 404.1520(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work

within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant's residual functional capacity (RFC) permits him to perform past relevant work, he is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [his] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. § 404.1520(a)(4)(v).

## III.     Analysis

Sanders argues that she is entitled to judgment on the administrative record because the ALJ improperly evaluated the persuasiveness of Dr. Slaughterbeck's medical opinion, Hatchert's completed teacher questionnaire, and Dr. Goewey's medical opinion in determining whether Sanders was disabled before the age of eighteen. (Doc. No. 10-1.)

### A.     Sanders's Child's SSI Claim

To establish a disability on a claim for child's SSI, Sanders must show that her impairment resulted in "marked" limitations in two functional domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). On remand, the ALJ found that Sanders had no limitations in the domains of acquiring and using information (domain one) or in interacting and relating with others (domain three) and found that Sanders had less-than-marked limitations in the remaining domains of attending and completing tasks (domain two), moving about and manipulating objects (domain four), caring for oneself (domain five), and health and physical well-being (domain six).

11

(AR 1164–69.) The ALJ therefore found that Sanders was not disabled before she turned eighteen. (*Id.*)

Sanders challenges how the ALJ evaluated the persuasiveness of Dr. Slaughterbeck's opinion in his determination that Sanders had a less-than-marked limitation in domain six (health and physical well-being) and the teacher questionnaire completed by Hachert in his determination that Sanders had a less-than-marked limitation in domain four (moving about and manipulating objects). (Doc. No. 10-1.) Sanders argues that, if the ALJ had properly accounted for and credited these opinions, he would have found that Sanders had marked limitations in both domains and therefore would have found her to be disabled. (*Id.*) The Commissioner argues that substantial evidence in the record supports the ALJ's findings. (Doc. No. 12.)

**1.      The ALJ's Evaluation of Dr. Slaughterbeck's Medical Opinion**

For child's SSI claims filed on or after March 27, 2017, SSA regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from [the claimant's] medical sources."[3] 20 C.F.R. § 416.920c(a). Instead, the ALJ must "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors

---

[3]      This is a departure from the regulations governing claims filed before March 27, 2017, which "[g]enerally . . . g[a]ve more weight to the medical opinion of a source who ha[d] examined [the claimant] than to the medical opinion of a medical source who ha[d] not examined [the claimant]." 20 C.F.R. § 416.927(c)(1). Those regulations specifically required an ALJ to give controlling weight to a medical opinion from the claimant's treating physician if the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record[.]" *Id.* § 416.927(c)(2).

including, but not limited to, evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the SSA's policies and evidentiary requirements. *Id.* §§ 416.920c(a), (c)(1)–(5); *Maben obo K.T.*, 2022 WL 3337162, at *1 (applying these factors to a claim for child's SSI). The regulations specifically require ALJs to "articulate in [their] determination[s] or decision[s] how persuasive [they] find all of the medical opinions" in a claimant's record. *Id.* § 416.920c(b).

Supportability and consistency are "[t]he most important factors" in this analysis. *Id.* § 416.920c(a). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* § 416.920c(c)(1). In assessing consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 416.920c(c)(2). The SSA has promised claimants that it "will explain how [it] considered the supportability and consistency factors . . . in [its] determination or decision" and "may, but [is] not required to, explain how [it] considered the [remaining] factors . . . ."[4] *Id.* § 416.920c(b)(2). "A reviewing court 'evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion.'" *Toennies v. Comm'r of Soc. Sec.*, Case No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

---

[4]    This differs from the regulations governing claims filed before March 27, 2017, which promised claimants that the SSA would "always give good reasons in [its] notice of determination or decision for the weight [it] g[a]ve [the] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Dr. Slaughterbeck reviewed Sanders's medical records and provided her medical opinion regarding Sanders's claims at the Commissioner's request. In her November 26, 2018 opinion, Dr. Slaughterbeck considered Sanders's functional capacity in the six domains and opined that Sanders had no limitation in acquiring and using information, attending and competing tasks, interacting and relating with others, and caring for herself; that Sanders had a less-than-marked limitation in the domain of moving about and manipulating objects, noting that Sanders had a "L[eft] antalgic gait with LLE [leverage leg extension] strength 4/5"; and that Sanders had a marked limitation in the domain of health and physical well-being, noting that Sanders had "[n]emaline rod myelopathy, NM scoliosis, s/p L hip dysplasia /surgery' and "L antalgic gait." (AR 131–32.) Dr. Slaughterbeck further opined that Sanders's "medically determinable impairment or combination of impairments is severe, but does not meet, medically equal, or functionally equal the listings[.]" (AR 132.)

The ALJ's written decision on remand found Dr. Slaughterbeck's medical opinion "mostly persuasive" and included the following analysis:

> Specifically, the evidence dealing with the period prior to the claimant obtaining the age of 18 indicates that, on August 21, 2018, Thomas Thrush, M.D., a State Agency consultant, opined the claimant had no limitation in most domains, apart from less than marked limitations with moving about and health and physical well-being (Exhibit 1A). On November 26, 2018, Sue E. Slaughterbeck, M.D., agreed with Dr. Thrush's opinion, with the exception that she determined the claimant had a marked limitation in health and physical well-being (Exhibit 7A). I find these opinions mostly persuasive, as they are generally consistent with the objective medical and school evidence of record. However, the finding regarding a marked limitation with health and physical well-being is less persuasive, as, although the claimant had some weakness and pain from her conditions, she made dramatic improvement in physical therapy, to where she reported that her gait no longer bothered her (Exhibits 12F at 63 and 11F at 11).

(AR 1163–64.)

The ALJ further addressed Sanders's improvements in physical therapy as follows:

The claimant attended physical therapy in January 2018, where her range of motion testing was unremarkable (Exhibit 12F at 3). Her treatment provider noted that she had good rehabilitation potential and a good prognosis (Exhibit 12F at 4). She then made progress in aquatic therapy (Exhibit 12F at 28). In addition, by June 2018, she made dramatic improvement in her stride length and functional ability and less of a Trendelenburg gait pattern (Exhibit 12F at 63).[5]

*      *      *

. . . [T]he claimant's abilities began to improve after she began physical therapy activities on April 12, 2018 (Exhibit 12F at 2). For example, by June 7, 2018, the claimant had made dramatic improvement in her stride length and her functional ability, and she continued to improve with each visit with less of a Trendelenburg gait pattern. In fact, the claimant only limped slightly when she was fatigued, and she had gradually increased her strength to a gross 4/5 bilaterally (Exhibit 12F at 63). The claimant continued to show improvement in her balance and gait mechanics on June 21, 2018, as well, when she was about to go on vacation for one month. She had only moderate limitations with activities of daily living, ascending stairs, bed mobility, household management tasks, lifting, mobility, prolonged standing, and squatting/stooping, with no limitations with prolonged sitting or sleeping, and only minimal limitations with walking for household distances (Exhibit 12F at 83–85).

(AR 1163, 1172.)

The ALJ explained his rationale for finding that Sanders had a "less than marked limitation in health and physical well-being" as follows:

Specifically, the claimant missed some school due to her physical conditions (Exhibit 1E at 2). As a result, throughout treatment, the claimant had a 504 plan from her high school, in order to address physical concerns (Exhibit 7E at 3). The 504 plan provided extended time to complete assignments, added lockers throughout the school so she would not have to carry books, and a health plan (Exhibit 4E at 2). However, her grades were mostly As with some Bs (Exhibits 4E at 18 and 22[–]31).

(AR 1169.)

---

[5]      "A Trendelenburg gait is defined as an abnormal, leaning gait occasioned by weakness in one lower extremity." *Mukes v. Comm'r of Soc. Sec.*, 946 F. Supp. 2d 737, 741 n.6 (S.D. Ohio May 20, 2013).

In domain six—health and physical well-being—the ALJ considers the "effects of physical or mental impairments and their associated treatments or therapies on [the claimant's] functioning that [the ALJ] did not consider" when assessing "moving about and manipulating objects." 20 C.F.R. § 416.926a(l). The effects can result in generalized, physical, or somatic symptoms. *Id.* § 416.926a(l)(4). ALJs must evaluate whether the symptoms manifest as chronic illness or as episodic periods of worsening and improving conditions. *Id.* § 416.926a(l)(3). The regulation directs that a claimant has a marked limitation in this domain:

> if [the claimant is] frequently ill because of [his or her] impairment(s) or ha[s] frequent exacerbations of [his or her] impairment(s) that result in significant, documented symptoms or signs. For purposes of this domain, "frequent["] means that [the claimant] ha[s] episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. We may also find that [the claimant] ha[s] a "marked" limitation if [he or she] ha[s] episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

*Id.* § 416.926a(e)(2)(iv).

Sanders makes three arguments as to why the ALJ erred in his analysis of Dr. Slaughterbeck's opinion that Sanders had a marked limitation in domain six. First, Sanders argues that the ALJ "cherry picked" from Dr. Slaughterbeck's opinion and only offered a "one-sentence analysis" for the conclusion that Slaugtherbeck's finding that Sanders had a marked limitation in health and physical well-being was less persuasive than her other opinions. (Doc. No. 10-1, PageID# 1498.) Second, Sanders argues that the ALJ failed to consider "the consistency between Dr. Slaughterbeck's findings and the disabling opinion proffered by Dr. Goewey . . . or even the more recent observations by Dr. Huffman at his 2022 consultative examination of [Sanders]." (*Id.*) Finally, Sanders argues that the ALJ's assertion that Sanders made dramatic improvements in her "physical abilities rests on a mischaracterization of the record." (*Id.* at

PageID# 1499.) The Commissioner responds that the ALJ properly accounted for Dr. Slaughterbeck's opined limitation in that domain and provided an adequate explanation for why he did not include a marked limitation in his RFC finding consistent with the substantial evidence in the record. (Doc. No. 12.)

Sanders is correct that the ALJ may not pick and choose evidence that supports his conclusion while ignoring evidence that undermines his conclusion. *See Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the medical record" rather than doing a proper analysis). However, arguments that an ALJ cherry-picked record evidence are "seldom successful because crediting [them] would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014).

In this case, there is "little indication that the ALJ improperly cherry[-]picked evidence" regarding Sanders's improvements in physical therapy. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). Sanders argues that the ALJ's finding of improvements during physical therapy "rests on a mischaracterization of the record" and that the ALJ "may not select only certain findings and most certainly may not mispresent those findings to support his position." (Doc. No. 10-1, PageID# 1499.) In support of her argument, Sanders points to June 21, 2018 therapy records showing that she was moderately impaired in the functional areas of bed mobility, household management tasks, mobility, and squatting/stooping and that her functional abilities in these areas had not improved. (AR 1082–83.) However, the same record also shows that Sanders "was moving around a lot[,]" that she "ha[d] improved with this bought of physical therapy[,]" and that she had "shown improvement in her balance and gait mechanics." (AR 1083, 1084.) With respect to fourteen short term therapy goals, the record showed that she "met" eight of them,

including improving her ability to stand for thirty minutes. (AR 1084.) The ALJ reviewed records of Sanders's physical therapy sessions in January and June 2018 and noted that they showed that Sanders "made progress in aquatic therapy[,]" made "dramatic improvement in her stride length and functional ability[,]" and had "less of a Trendelenburg gait pattern[.]" (AR 1163.) The ALJ considered the record as a whole, including Dr. Slaughterbeck's opinions and the physical therapy sessions notes, and identified substantial evidence supporting his finding that Sanders's impairments did not support a marked limitation in domain six. Ultimately, the ALJ's written decision shows that he reviewed and considered substantially the same notes from Sanders's physical therapy sessions that Sanders argues support a finding of disability but reached a different conclusion. Where the evidence can support both the ALJ and Sanders's position, as it does here, the ALJ's decision is not subject to reversal. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."); *see Incorvia v. Comm'r of Soc. Sec.*, Case No. 1:22-CV-01911, 2023 WL 6519152, at *9 (N.D. Ohio Sept. 20, 2023) ("As support for finding this impairment severe, [the claimant] merely presents the same evidence the ALJ discussed and requests that this Court reach a different outcome—an impermissible request to reweigh the evidence."), *report and recommendation adopted*, 2023 WL 6519082 (N.D. Ohio Oct. 5, 2023); *see also Trammell v. Comm'r of Soc. Sec.*, No. 1:13cv794, 2015 WL 1020211, at *6 (S.D. Ohio Mar. 9, 2015) ("That the evidence could be interpreted to support *either* a 'marked' or a 'less-than-marked' finding does not mean that it must be interpreted in [the claimant's] favor."); *Blakley*, 581 F.3d at 406 (stating that "'there is a zone of choice within which the decisionmakers can go either way, without interference by the courts'" (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986))). Substantial evidence supports the ALJ's finding that Sanders had a less-

than-marked limitation in domain six. *Cf. Dickerson ex rel. A.C. v. Comm'r of Soc. Sec.*, Case No. 23-5718, 2024 WL 1134632, at *6 (6th Cir. Mar. 15, 2024) (stating that "[t]he regulation does not require a complete cure of impairments affecting physical well-being to find a less-than-marked limitation").

Sanders also points to the fact that, although Dr. Singh's medical opinion noted in August 2019 that she was able to tolerate her symptoms sufficiently to attend college, Sanders testified at her initial hearing that she did not return for the Fall 2019 semester because "she could not balance working part time and [ ] attending school." (Doc. No. 10-1, PageID# 1499 (citing AR 45–46).) Sanders stated that she took that semester off because "[she] needed [ ] money and [she couldn't] go to school at the same time." (AR 47.) At her hearing on remand, Sanders stated that "[she] had an apartment at the time and [ ] was working as much as [she] could to . . . pay for those bills" but that she "couldn't work and go to school at the same time" and therefore "had to pick one" over the other. (AR 1191.) Sanders did not mention her physical impairments as a reason she could not return to school in either hearing. Thus, the ALJ did not mischaracterize the record in relying upon Singh's opinion that Sanders could return to school. Further, the improvements that the ALJ noted were relevant to determining Sanders's limitations. The ALJ noted that, "[a]s to her very active daily activities, [Sanders] testified that she was driving without any formal restrictions or accommodation, working as a cashier at Kroger in 2019 and 2020, living with a boyfriend and roommate, taking her boyfriend to work and from work each day, [and] visiting her mother when her boyfriend was at work[.]" (AR 1159.) The ALJ further noted that Sanders testified that she was "helping her younger brother with homework, taking her brother places, helping her mother around her house doing chores, such as cleaning and washing dishes[.]" (*Id.*)

Finally, Sanders's argument that the ALJ failed to analyze the consistency of Dr. Slaughterbeck's opinion with the opinions of Dr. Goewey and Dr. Huffman is not persuasive. To analyze consistency, an ALJ must compare the medical opinion at issue to "other medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, Case No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023). Here, the ALJ did so when he analyzed the consistency of Dr. Slaughterbeck's opinion with Dr. Thrush's opinion and the notes from Sanders's physical therapy sessions (AR 1163–64) and addressed the consistency of Dr. Goewey and Dr. Huffman's opinions elsewhere in the decision (AR 1174–76). Sanders does not cite any case law or regulation to support requiring an ALJ to address how a medical opinion is consistent or inconsistent with every other medical opinion in the record.[6]

## 2.      Hatchert's Teacher Questionnaire

Hatchert completed a teacher questionnaire regarding Sanders's "overall functioning" on September 26, 2017. (AR 243–50.) Hatchert observed "[n]o problems" in the functional domains of acquiring and using information, attending and completing tasks, interacting and relating with others, or caring for herself. (AR 244–46, 248.) Hatchert noted that Sanders had problems functioning in the domain of "moving about and manipulating objects." (AR 247.) With respect to listed activities in that domain, the questionnaire provided the following rating keys: level-one "[n]o [p]roblem"; level-two "slight problem"; level-three "obvious problem"; level-four "serious problem"; and level-five "very serious problem[.]" (*Id.*) Hatchert checked that Sanders had level-

---

[6]      In the context of source-level articulation, the regulation states that, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), [the Commissioner] will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis . . . . We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 416.920c(b)(1).

five very serious problems in the activities of "[m]oving body from one place to another[,]" "[m]oving and manipulating things[,]" "[d]emonstrating strength, coordination, dexterity in activities or tasks[,]" and "[m]anaging pace of physical activities or tasks"; Sanders had a level-four serious problem in "[i]ntegrating sensory input with motor input"; Sanders had a level-three obvious problem in "[s]howing a sense of body's location and movement in space"; and Sanders had a level-two slight problem in "[p]lanning, remembering, executing controlled motor movements[.]" (*Id.*) In a section that allowed the evaluator to provide additional comments, Hatchert wrote:

> The student had a difficult time walking around the school. She had an elevator pass. She also was allowed to leave early to avoid crowded hallways. In addition, another student carried her bags/books for her. She also had a handicap parking spot [and] had the ability to purchase multiple lockers due to the difficulty she had getting around the school.

(*Id.*) In the domain of "medical conditions and medications/health and physical well-being[,]" Hatchert noted that she did not know whether medications were prescribed to Sanders, whether Sanders took medication on a regular basis, or whether Sanders's functioning changed after she took medication. (AR 249.) However, Hatchert checked "yes" to indicate that Sanders frequently missed school due to illness and wrote that Sanders "missed days when she was in to[o] much pain to attend due to the musculoskeletal disorder[.]" (*Id.*) Hatchert also wrote that "[w]alking was very difficult for [Sanders]" and that Sanders "moved slowly [and] walked with a slight limp." (*Id.*)

The ALJ addressed Hatchert's teacher questionnaire as follows:

> In addition, in September 2017, Theowana Hatchert, one of the claimant's teachers, reported that the claimant had no problems in the functional domains, apart from a very serious problem with moving about and manipulating objects, due to difficulty walking around school and carrying her bags. The claimant also missed school due to pain (Exhibit 1E). This opinion is persuasive, as it is consistent with the objective evidence of record indicating that although most examinations showed 5/5 strength, the claimant had 4+/5 strength in her left lower extremity on one occasion, as well as 4/5 hip flexion on another occasion (Exhibits 13F at 4 and 14F at 3).

(AR 1164.) The ALJ also reviewed the accommodation she received in school as follows:

> The claimant missed some school days due to her physical conditions (Exhibit 1E at 2). As a result, throughout treatment, the claimant had a 504 plan from her high school, in order to address her physical concerns (Exhibit 7E at 3). The 504 plan provided extended time to complete assignments, added lockers throughout the school so she would not have to carry books, and a health plan (Exhibit 4E at 2). However, the claimant's grades were mostly As, with some Bs (Exhibit 4E at 18, and 22-31).

(AR 1163.)

The ALJ explained his rationale for finding that Sanders had a "less-than-marked" limitation in moving about and manipulating objects as follows:

> The claimant reported that her symptoms of back pain were manageable; she could still attend college classes; and the pain was a dull aching sensation and episodic, mostly from standing or walking for extended periods. She had no leg pain, numbness or tingling, and no gait instability. She was taking Advil/Motrin for pain. A physical exam was also normal (Exhibit 17F at 8–9). The doctor noted that she had improved overall, and she should continue with her physical therapy exercises and follow up in a year (Exhibit 17F at 20). Another exam was mostly normal at the time, with a slight antalgic gait, with minimal tenderness to the lumbar spine, full range of motion, negative straight leg raising and a negative Faber test. She also had normal coordination, muscle strength testing, 4/5 hip flexion, and normal sensation and reflexes (Exhibit 14F at 3). For these reasons, the claimant has less-than-marked limitation in this area.

(AR 1167.)

Sanders argues that the ALJ's "cursory analysis does not explain why he did not craft an RFC that accounted for the very serious problems in moving about [and] manipulating objects assessed by [Hatchert] (despite assessing the opinion as persuasive)" and that the ALJ failed to draw the required "logical bridge" between analysis and conclusion. (Doc. No. 10-1, PageID# 1501, 1503.) In support of her arguments, Sanders cites Social Security Ruling 09-2p for the proposition that "'[e]vidence from other sources who are not medical sources and who know and have contact with the child can also be very important to our understanding of the severity of a child's impairment(s) and how it affects day-to-day functioning.'" (*Id.* at PageID# 1501 (quoting

SSR 09-2p, 2009 WL 396032, at *4 (Feb. 18, 2009)).) Sanders acknowledges that 20 C.F.R. § 416.920c's standard governing claims filed after March 27, 2017, "do[es] not require the consideration of non-medical sources" but argues that, because the SSA has not rescinded SSR 09-2p, "ALJ[s] must still consider such opinions." (Doc. No. 10-1, PageID# 1501.) She argues that, "[u]nder SSR 06-3p, the ALJ was required to consider teacher opinions using the same factors used in evaluating a medical opinion." (*Id.*)

As the Commissioner points out, "SSR 09-2p creates no . . . obligation" for ALJs to evaluate non-medical opinions under the new regulations. (Doc. No. 12, PageID# 1516 n.3.) The SSA rescinded SSR 06-3p on March 27, 2017, and that ruling has no bearing on Sanders's claim. *See* SSR 96-2p, 2017 WL 3928298 (Mar. 27, 2017) (rescinding SSR 96-2p, 96-5p, and 06-03p effective March 27, 2017). SSR 09-2p and 20 C.F.R. § 416.924a require ALJs to consider all relevant record evidence to determine if children are disabled, including opinion evidence from nonmedical sources such as teachers. *See* SSR 09-2p, 2009 WL 396032, at *3; 20 C.F.R. § 416.924a. However, unlike the requirements for considering opinion evidence from medical sources, SSA rules and regulations do not require ALJs to articulate how they consider evidence from nonmedical sources. *See* 20 C.F.R. § 416.920c(d) ("We are not required to articulate how we considered evidence from nonmedical sources . . . ."); *Ricker ex rel. A.J.R. v. Kijakazi*, No. 1:20-CV-200, 2022 WL 141604, at *3 (E.D. Tenn. Jan. 14, 2022) ("All that SSR 09-2p requires of an ALJ is to *consider* the non-medical source evidence . . . [and] the ALJ need not articulate *how* he considered the factors listed in 20 C.F.R. § 416.920c(a)–(c) when evaluating evidence from non-medical sources." (citation omitted)).

This Court recently addressed these considerations in *Howlett ex rel. S.F.L.M. v. Social Security Administration*, No. 3:23-cv-00097, 2024 WL 1019275, at *1 (M.D. Tenn. Mar. 8, 2024).

S.F.L.M. objected to the Magistrate Judge's finding that the SSA rescinded SSR 06-3p and that current SSA rules and regulations do not require ALJs to articulate how they consider evidence from nonmedical sources. *S.F.L.M.*, 2024 WL 1019275, at *1. In support of her objection, S.F.L.M. argued "that courts in the Sixth Circuit [should] follow guidance from 20 C.F.R. § 404.1527 concerning opinions from nonmedical sources." *Id.* The Court rejected that argument because "Section 404.1527 expressly limits it[s] application to claims filed *before* March 27, 2017" and "[S.F.L.M.'s] claim was filed in 2018"; therefore "Section 404.1527 [was] not applicable to her claim." *Id.* (citing 20 C.F.R. § 404.1527). For the same reasons, § 405.1527 does not apply to Sanders's claims, which were originally filed in 2018.

Sanders's argument that the ALJ would have found that Sanders had a marked limitation in domains four and six had the ALJ property accounted for and credited Hatchert's opinions is not supported by substantial record evidence. For "[a]dolescents (age 12 to attainment of age 18)[,]" the regulation provides that the adolescent "should be able to use [their] motor skills freely and easily to get about [their] school, the neighborhood, and the community[,]" "should be able to participate in a full range of individual and group physical fitness activities[,]" and "should show mature skills in activities requiring eye-hand coordination, and should have the fine motor skills needed to write efficiently or type on a keyboard."[7] 20 C.F.R. § 416.926a(j)(2)(v). SSA regulations define "a 'marked' limitation" as one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities"; it is "a limitation that is 'more than moderate' but 'less than extreme.'" *Id.* § 416.926a(e)(2)(i).

---

[7]    On the teacher questionnaire, Hatchert wrote "[n]ot aware" to the section asking for Sanders's "[a]ctual [g]rade [l]evel[.]" (AR 243.) But, because Sanders states that she was born on March 31, 2000, and Hatchert completed the questionnaire on "9-26-17 [September 26, 2017]" (AR 250), the Court concludes that Sanders was seventeen at that time and therefore the guidance with respect to adolescents applies to here.

Although the teacher questionnaire suggests level-five very serious problems with respect to four out of seven activities and a level-four serious problem with respect to one activity (AR 247), the ALJ also identified and considered other record evidence that supports his conclusion that Sanders had less-than-marked limitations in that domain. The ALJ considered Dr. Thrush's evaluation of Sanders's records and determination that Sanders had a less-than-marked limitation in domain four. (AR 100.) The ALJ also considered Dr. Slaughterbeck's assessment that Sanders had less-than-marked limitation in domain four. (AR 131.) The ALJ cited to Dr. Singh's medical evaluations of Sanders during visits on August 8, 2018, and August 7, 2019, where Dr. Singh conducted neurological and musculoskeletal physical examinations of Sanders, among other examinations. (AR 1091–93; 1132–33.) On both visits, Dr. Singh's musculoskeletal examination found that Sanders "walk[ed] with a slight antalgic gait"; Sanders's "lumbar spine show[ed] full flexion, extension, and lateral bending with minimal discomfort[,] . . . minimal tenderness to the lumbar spine"; and Sanders had "[n]egative straight leg raise" and "[n]egative FABER's test." (AR 1092, 1132.) The results of the neurological examination were the same in 2018 and 2019: Dr. Singh noted that Sanders's "normal coordination, muscle strength testing show[ed] 4/5 hip flexion, normal sensation, deep tendon reflexes [were] equal bilaterally." (AR 1092, 1133.) During the 2019 visit, Dr. Singh also wrote that Sanders's last physical therapy session was in May 2019 and that since that visit, "[Sanders] has not had any changes in her symptoms" which "[were] . . . manageable" at that time. (AR 1132.) Dr. Singh also wrote that Sanders "described [the pain] as a dull aching sensation and [was] rated at a level 1–2 out of ten on the pain scale" and that Sanders "deni[ed] any . . . gait instability" and "any radicular leg pain." (*Id.*) Further, the ALJ cited to a "function report" that Sanders completed on April 19, 2018, in which she explained in great detail her impairments, and when asked to describe what she did from

the time she woke up until she went to bed, Sanders stated that "[she] wake[s] up [and] get[s] ready for school[,]" that she "drive[s] to school[,]" and as for social activities, Sanders stated that she "watch[es] TV, hang[s] out and visit[s] [others]" and "sometimes [went] to concerts[.]" (AR 1415, 1419.)

Sanders has not shown that the ALJ's conclusions regarding the persuasiveness of Hatchert's questionnaire response was not supported by substantial evidence or otherwise violated SSA regulations. Consequently, Sanders has not shown that remand is warranted based on the ALJ's assessment of Hatchert's teacher questionnaire.

**B.     The ALJ's Analysis of Goewey's Opinion in the Context of Sanders's CIB Claim**

For CIB claims filed on or after March 27, 2017, the SSA regulations provide that the ALJ will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors including, but not limited to, evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the SSA's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5); *see Connie H. v. Comm'r of Soc. Sec. Admin.*, Case No. 3:23-cv-00046, 2024 WL 1326275, at *5 (S.D. Ohio Mar. 28, 2024) (applying these factors to child's insurance benefits); *Arnold v. Comm'r of Soc. Sec.*, Case No. 2:23-cv-00070, 2024 WL 3938466, at *6 (W.D. Mich. June 10, 2024) (same). The regulations specifically require ALJs to "articulate in [their] determination[s] or decision[s] how persuasive [they] find all of the medical opinions" in a claimant's record. *Id.* § 404.1520c(b). Supportability and consistency are "[t]he most important factors" in this analysis. *Id.*

§ 404.1520c(a). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). In assessing consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Dr. Goewey examined Sanders on June 25, 2018. (AR 1087–89.) Goewey noted the following physical examination findings:

**PHYSICAL EXAMINATION:**

VITAL SIGNS: Height 59 inches without shoes, weight is 170 pound[s] without shoes, blood pressure 118/77, pulse 92 and respiratory rate is 16. Vision without glasses 20/25 on the right, left and both is 20/20.

GENERAL APPEARANCE: No apparent distress. The claimant is a short-statured obese female. Fair historian and effort. Mobilizes slowly. Full speech, cognition and hearing.

HEENT: Normocephalic, atraumatic. PERRLA, EOMI. Normal conjunctivae. Ears revealed normal pinnae, canals, and tympanic membranes. Nares are patent. Oropharynx reveals moist mucous membrane.

CARDIOVASCULAR: Heart sounds S1, S2. No murmurs, rubs or gallops. Peripheral pulses are full. No cyanosis, clubbing or edema.

RESPIRATORY: No use of accessory muscles. The claimant was not breathless on examination. Breath sounds are clear.

ABDOMEN: Soft, nontender, nondistended. No organomegaly.

MUSCULOSKELETAL: The claimant had full range of motion on her cervical spine. Thoracolumbar spine flexion of 60 degrees, extension of 10 degrees, and side bending 10 degrees. Negative straight leg raising test. Positive dextroscoliosis with extensive scarring and keloid formation. Upper extremity evaluation, bilateral shoulder forward flexion and abduction to 130 degrees. Full range of motion on the claimant's elbows, forearms, wrists as well as hands and finger evaluation. Lower extremity evaluation reveals left hip flexion of 60 degrees, right hip flexion of 80 degrees, extension 20 degrees bilaterally, full abduction and adduction 10 degrees bilaterally secondary to body habitus. Full internal and external rotation noted.

Knee flexion on left is 90 degrees. Knee flexion on right 100 degrees. Full extension. Full range of motion on feet and ankle evaluation.

NEUROLOGICAL: Cranial nerves II through XII grossly intact. Motor is 4+/5 left lower extremity, otherwise 5/5. Sensation is full. Deep tendon reflexes are full except DTRs not elicited on knee evaluation. Romberg testing is negative.

GAIT AND STATION EVALUATION: Reveals left antalgic gait. Braces furniture during attempted tandem walk. Momentary completion of toe walking. Unable to complete heel walking. Squatting at 20%. Momentary balancing is noted.

(AR 1088–89.)

Dr. Goewey assessed that Sanders had "[s]coliosis with reported central cord disease" and "nemaline rod myelopathy with muscular dystrophy." (AR 1089.) Dr. Goewey opined that Sanders "w[ould] be able to sit between three and four hours daily, stand and walk at least two hours daily, and lift and carry 20 to 30 pounds occasionally. Limited activities of stair climbing as well as squatting, bending and kneeling. The claimant would benefit from assistive device for prolonged walks and uneven surfaces." (*Id.*)

The ALJ summarized Dr. Goewey's findings in the decision on remand as follows:

As for the opinion evidence, on June 25, 2018, Dr. Goewey, the consultative examiner, opined that the claimant could sit between three and four hours daily, stand and walk at least two hours daily, and lift and carry twenty to thirty pounds occasionally. She had limited stair climbing, squatting, bending, and kneeling, and required an assistive device for prolonged walks and uneven surfaces (Exhibit 13F). I find this opinion persuasive, as it is essentially consistent with the objective evidence of record, including the claimant's documented improvement with ambulation as the result of physical therapy (Exhibit 12F).

Further, it was supported by Dr. Goewey's own consultative examination findings indicating the claimant used no assistive device. The claimant was also 59 inches tall and weighed 170 pounds, with no apparent distress, slow mobilization, a full cervical range of motion, thoracolumbar spine flexion of 60 degrees, thoracolumbar extension of 10 degrees, side bending of 10 degrees, a negative straight leg raise, positive dextroscoliosis, bilateral shoulder forward flexion and abduction to 130 degrees, full upper extremity ranges of motion otherwise, left hip flexion of 60 degrees, right hip flexion of 80 degrees, hip extension of 20 degrees bilaterally, full hip abduction, hip adduction to ten degrees bilaterally secondary to body habitus, full internal and external rotation, left knee flexion to 90 degrees, right knee flexion to 100 degrees, full knee extension, 4+/5 motor strength in her left lower extremity

28

and full 5/5 strength in all other extremities, full sensation, a left antalgic gait, a need to brace herself during tandem walk, momentary completion of toe walking, an inability to heel walk, an ability to squat 20%, and momentary balancing (Exhibit 13F).

However, while giving the claimant the full benefit of the doubt, I also find the claimant has the additional limitations found in the residual functional capacity. However, there is little support for Dr. Goewey's findings that the claimant could only sit between three and four hours daily, she he [*sic*] specifically did not report any subjective limitations with sitting to Dr. Goewey and he did not indicate there were any objective findings supporting such sitting limitations.

(AR 1174.)

Sanders argues that the ALJ's assertion that there was "little support for Dr. Goewey's findings that the claimant could only sit between three and four hours daily" stems from "a mischaracterization of the record" and Dr. Goewey's opinion. (Doc. No. 10-1, PageID# 1505.) Sanders explains that the musculoskeletal examination conducted by Dr. Goewey "revealed numerous abnormalities including positive dextroscoliosis with extensive scarring and keloid formation, and reduced range of motion of the spine and hip" and that Dr. Goewey "clearly stated that the sitting limitations were '[b]ased upon the above history and physical as well as file evidence reviewed . . . .'" (*Id.* (alterations in original) (quoting AR 1089)). Further, Sanders argues that the ALJ's "cursory and conclusory" "analysis fails to satisfy the governing minimum articulation standards and precludes meaningful review" because the ALJ "merely offer[ed] a half-sentence explanation that [Sanders] 'did not report any subjective limitations with sitting to Dr. Goewey and he did not indicate that there were any objective findings supporting such limitations.'" (*Id.* (quoting AR 1174)). Sanders states that she "endorsed both back and hip pain" at the time of her examination by Dr. Goewey. (Doc. No. 10-1, PageID# 1505.)

The Commissioner responds that the ALJ properly considered Dr. Goewey's medical opinion but found that Dr. Goewey's opinion that Sanders could only sit three to four hours in an eight-hour workday was not supported by objective medical evidence and was not consistent with

29

other medical findings in the record. (Doc. No. 12.) The Commissioner argues that Sanders's reports of back and pain and "Dr. Goewey's generalized statement that all of his opined limitations came after his examination and review of the evidence" do not "specifically support[ ] [his] conclusion that [Sanders] was severely restricted in how much she could sit during a workday." (*Id.* at PageID# 1518–19.)

While the applicable SSA "regulations plainly are less demanding than the former rules governing the evaluation of medical source opinions, especially those of treating sources[,] . . . 'they still require that the ALJ provide a coherent explanation of [her] reasoning.'" *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021) (third alteration in original) (quoting *Lester v. Saul*, Case No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021)). The SSA has explained that the new regulations set forth the "minimum level of articulation" ALJs must "provide in [their] determinations and decisions to provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416), *technical errors corrected by* 82 Fed. Reg. 15132-01 (Mar. 27, 2017); *see also Hardy*, 554 F. Supp. 3d at 906 (same). "An 'ALJ's failure . . . to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [claimant's] disability determination was supported by substantial evidence.'" *Hardy*, 554 F. Supp. 3d at 906 (alterations in original) (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021)). It also "ignores the mandate of the regulations that guarantees claimants a certain level of process that cannot be discounted by the substantial evidence test alone." *Id.* at 908 (citing *Blakley*, 581 F.3d at 410).

The ALJ's analysis of Dr. Goewey's medical opinion does not satisfy the regulatory standard. First, the ALJ discounted Dr. Gowey's opined limitation on Sanders's ability to sit with a cursor, one-sentence analysis. The ALJ asserted that there was little support for Dr. Goewey's findings that Sanders could only sit between three and four hours daily because "[Sanders] specifically did not report any subjective limitations with sitting to Dr. Goewey . . . ." (AR 1174.) But that statement does not explain how Dr. Goewey's opinion was unsubstantiated by the "objective medical evidence and supporting explanations . . . ." *See Charlene R. v. Comm'r of Soc. Sec.*, Case No. 1:22-cv-473, 2023 WL 5214688, *6, *10 (S.D. Ohio Aug. 15, 2023) (alteration in original) (quoting 20 C.F.R. § 416.920c(c)(1)). It also does not identify the specific medical findings that undermine Dr. Goewey's opined limitation. Even if Sanders did not "specifically" report "subjective limitations with sitting," that alone does not conclusively lead to the determination that Dr. Goewey's opined limitation was unsupported, particularly where Dr. Goewey's opinion was "based upon the above history and physical as well as file evidence [that he] reviewed[.]" (AR 1089). *See Gavre v. Comm'r of Soc. Sec.*, Civ. Action No. 3:20-CV-00551, 2022 WL 1134293, at *5 (W.D. Ky. Jan. 3, 2022*), report and recommendation adopted*, 2022 WL 798035 (W.D. Ky. Mar. 15, 2022).

The ALJ also failed to sufficiently articulate the extent to which Dr. Goewey's opined limitations are inconsistent with the evidence from other medical sources and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2). The ALJ did not articulate what particular examination findings he considered to be inconsistent with Dr. Goewey's assessment of Sanders's limitations or whether or how he considered examination findings that did support Dr. Goewey's assessment. *See Terhune v. Kijakazi*, Civ. Action No. 3:21-37, 2022 WL 2910002, at *4 (E.D. Ky. July 22, 2022) ("[T]he ALJ's only discussion of the nurses' medical opinions was a brief statement that

their opinions were not supported by *any* objective medical findings in the record. This falls far short of 20 C.F.R. § 404.1520c(b)(2)'s 'explanation' demands."); *Charlene R.*, 2023 WL 5214688, *6, *10 (rejecting an ALJ's findings that two medical opinions "were inconsistent with 'the objective findings from [plaintiff's] treating sources'" because the ALJ "offer[ed] a generalized statement" regarding the consistency factor and "fail[ed] . . . to identify the objective finding or the specific treating source records (mental or physical) that provide[d] the point of comparison"); *see also Brooks v. Comm'r of Soc. Sec.*, No. 2:22-CV-158, 2024 WL 966560, at *5 (E.D. Tenn. Mar. 6, 2024) (finding that the ALJ's explanation of the consistency factor "inadequate" where the ALJ found a psychologist's opinion "inconsistent with the record as a whole" "[w]ithout expla[ining] [ ] how [the opinion] was inconsistent or what parts were inconsistent . . ."). The ALJ's generalized statement does not satisfy the regulatory standard as to the consistency factor because it fails to identify and articulate what particular examination findings were inconsistent with Dr. Goewey's assessment. *Charlene R.*, 2023 WL 5214688, at *6; *Brooks*, 2024 WL 966560, at *5.

## IV.     Conclusion

For these reasons, Sanders's motion for judgment on the record (Doc. No. 10) is GRANTED IN PART and DENIED IN PART, and the Commissioner's decision is AFFIRMED IN PART and REVERSED IN PART. This matter is REMANDED to the SSA for further administrative proceedings consistent with this Memorandum Opinion and Order.

This is a final judgment under Federal Rule of Civil Procedure 58. The Clerk's Office is DIRECTED to close the case file.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge